### UNITED STATES of America

v.

### Clarence GAITHER, Jr.

### Crim. A. No. 1405.

United States District Court
D. Delaware.

Oct. 5, 1962.

Stanley C. Lowicki, Asst. U. S. Atty., Wilmington, Del., for the U. S.

Victor F. Battaglia, of Theisen & Lank, Wilmington, Del., for defendant.

LAYTON, District Judge.

During the early morning of October 3, 1961, two city policemen noticed an automobile with Pennsylvania license plates parked in the 500 block of South Market Street in Wilmington, Delaware. The car was apparently vacant or abandoned. The neighborhood is notorious for the many breakings and enterings of warehouses, gasoline stations and other business buildings in the locality. The officers walked over to the car and played a flashlight inside. Lying on the front seat was a Negro apparently asleep. While one officer questioned him, the other walked around the car shining his flashlight inside but not opening the doors. Questioning produced the information that the Negro occupant was Clarence Gaither proceeding from Phila-

224

delphia to some point in the South; that he did not own the car which, he said, had been loaned to him by a friend; that he had no license, registration or other identification whatever; that the car had run out of gas and he had pulled over to go to sleep; and that he had but seven cents on his person. The officer observed that despite the chilly temperature, he was clothed in nothing but a coverall. While the interrogation was taking place, the other policeman, by that time on the other side of the car with the flashlight, noticed that there was no key in the switch and that the ignition wires were hanging below the dashboard indicating the possibility that the car might have been stolen by "jumping" the wires. Because the defendant had no identification whatever, was scantily clothed against the cold, and practically penniless, the officers arrested him on the spot for vagrancy. Simultaneously, a passerby warned the officers that a suspicious man was loitering around the corner. While one officer went to investigate, the remaining officer asked defendant where he got the car and the defendant admitted he had stolen it. The officers then took him to headquarters under the charge of vagrancy and immediately called Philadelphia but could find no report of a stolen car. Later, Philadelphia police telephoned that the car had been stolen. The vagrancy charge was thereafter retired and the present charge of violation of the Dyer Act placed against the defendant, who was subsequently found guilty of the charge.

Defendant takes the position that the arrest was illegal and the fruits of the investigation invalidly obtained. This argument is difficult to follow. Defendant concedes the right of the officers to investigate the suspicious situation presented by an apparently unoccupied car at 3:00 a. m., in a neighborhood notorious for crime. But he argues that once the defendant gave his name, address and destination the officers should have waived him on his way, overlooking the apparently minor details that the car was out of gas, the defendant penniless, without any identification and scantily dressed, and the wires "jumped". The police were not obliged to believe that the defendant lived in Philadelphia. For all they knew the car might have been abandoned and the defendant, without sufficient clothing to withstand the cold and lacking funds for a lodging, was wandering along the highway and crawled into the car to sleep. They felt there was reasonable ground for a vagrancy charge. The "jumped" wires were discovered even before the vagrancy charge was placed and during the perfectly proper investigation of a car parked under suspicious circumstances.[1] When the defendant admitted without any pressure, "roughing up" or threats that he had stolen the car, the police might have abandoned the vagrancy charge and re-arrested him for car theft. But it would have been a slightly absurd and empty formality at 3:00 o'clock in the morning to have stated that they were hereby withdrawing the vagrancy charge and placing a charge of auto theft against the defendant. Arresting officers are not held to the same strict precision in definition of crimes as is a prosecuting attorney in preparing an indictment. All that is required is that the officer have a "reasonable ground to believe that the person to be arrested has committed a misdemeanor in his presence * * *." Title 11, Del.C. § 1906.[2] The arresting officer does not have to have before him that degree of proof necessary for a conviction. Here, had the facts (leaving out the jumped wires and the confession)

1. Query. The legality of the arrest aside, was the admission that the car was stolen and the "jumped" wires not legally obtained in any event? Compare Wong Sun v. United States, 288 F.2d 366, 370–371 (9th Cir.Ct., 1961), cert. granted 368 U.S. 817, 82 S.Ct. 75, 7 L.Ed.2d 23 (1961).

2. Undoubtedly, this statute meets the standards of the Fourth Amendment to the Federal Constitution. Cf. Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

been presented to a Grand Jury on a vagrancy indictment, it is not unreasonable to suppose they might have returned a true bill. Of course, upon trial, when the facts as to defendant's background were all brought out and verified, no doubt there would have been an acquittal. And, very probably, an experienced prosecuting attorney after some investigation of the defendant's background would not have pressed the vagrancy charge at all. But these officers were not trained in the law. They were doing their job as police officers and whether or not they had reasonable ground to believe that defendant was a vagrant [3] must be measured in the light of a policeman's training and experience under facts apparent at the time of the arrest, not in the light of a prosecuting attorney's training and experience under additional facts revealed by a subsequent investigation.

Excessive zeal on behalf of the rights of citizens found under highly suspicious circumstances such as here present must be tempered by a recognition that the interests and safety of the public are involved. Sometimes it would seem that even the courts lose sight of this simple proposition.

All this is well stated in the very sensible opinion by Judge Prettyman of the United States Court of Appeals for the District of Columbia, Bell v. U. S., 102 U.S.App.D.C. 383, 254 F.2d 82, 85, where it is said:

> "Reasonable grounds are determined by the circumstances. '[F]actual and practical considerations of everyday life', 'facts and circumstances', 'acting on facts', 'the apparent facts', 'in the circumstances' are some of the expressions used by the Court in the opinions from which we have quoted. The pertinent circumstances are those of the moment, the actual ones. Officers patrolling the streets at night do not prearrange the setting. They do not schedule their steps in the calm of an office. Things just happen. They are required as a matter of duty to act as reasonably prudent men would act under the circumstances as those circumstances happen. Even the ultimate power of an officer in the case of a felony, the justification for killing an offender, depends on the circumstances of the moment. As Judge Parker wrote for the Fourth Circuit, the rule is that an officer has the right to use such force 'as under the circumstances appears reasonably necessary' to effect the arrest, and, as he said, the jury must judge of the necessity 'in the light of the circumstances as they reasonably appear to the officer at the time.'
>
> "Among the other pertinent circumstances is the qualification and function of the person making the arrest. The standard is a reasonable, cautious and prudent man. But the question is whether the person making the arrest had probable cause. Probable cause is not a philosophical concept existing in a vacuum; it is a practical and factual matter. A fact which spells reasonable cause to a doctor may make no impression on a carpenter, and vice versa. Did the person who made the arrest, if a reasonable and prudent man, have probable cause? An officer experienced in the narcotics traffic may find probable cause in the smell of drugs and the appearance of paraphernalia which to the lay eye is without significance. His action is not measured by what might be probable cause to an un-

---

3. " 'Tramp' means any person without a home in the town or hundred in which he may be found wandering about without employment and any regular and visible means of living;

" 'Vagrants' include (1) all beggars and vagabonds who roam about from place to place, without any lawful business or occupation, sleeping in out-houses, barns, market places, sheds, or in the open air not giving a good account of themselves * * *." 11 Del.C. § 881.

226

trained civilian passerby. When a peace officer makes the arrest the standard means a reasonable, cautious and prudent peace officer. The question is what constituted probable cause in the eyes of a reasonable, cautious and prudent peace officer under the circumstances of the moment.

"The problem faced by the officer is one of probabilities—not certainties and not necessarily eventual truth. As we have quoted Mr. Justice Rutledge, 'In dealing with probable cause, however, as the very name implies, we deal with probabilities.' And the Justice went on to write that room must be allowed for some mistakes, so long as the mistakes are 'those of reasonable men, acting on facts leading sensibly to their conclusions of probability.'

"At the trial in the case at bar, in answer to the question, 'And for what offense were they being arrested at that time?', the officer testified, 'Investigation of housebreaking.' Of course there is no such crime as 'Investigation'. But this description given by the officer does not go to the question of probable cause. The question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a felony had been committed and that the men in the car had committed it. The situation was a sudden, unanticipated development: Suppose the officer had arrested these men upon belief that they had committed a housebreaking, but the legal lights in charge of preparing indictments had decided the offense was robbery; or suppose later information had disclosed a murder. Would the arrest have been invalid? Of course not. So to hold would make a mockery of the Supreme Court's admonition to us that probable cause is a matter of practicalities, not of technicalities."

Motion denied.