# STATE v. PAUL V. HARRIS.*

121 N. W. (2d) 327.

April 19, 1963—No. 38,375.

* Certiorari denied by the United States Supreme Court.

*John S. Connolly* and *Andrew B. Kjos,* for relator.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Allan R. Markert,* Assistant County Attorney, for respondent.

NELSON, JUSTICE.

The facts involved in this case are practically undisputed. At 12:45 a. m. on August 2, 1960, defendant was sitting in his parked automobile on Benjamin Street Northeast, just off 45th Street, in Columbia Heights. At the same time Officers Melvin Land and John Marchiniak of the Columbia Heights Police Department were patrolling the area in an unmarked vehicle. As the officers turned onto Benjamin Street from

45th Street, they noticed that defendant's automobile was parked at an odd angle with the rear pointing into a driveway where a trailer holding a boat was parked. As they approached defendant's automobile, they noticed that he was looking backward toward the home near which the trailer was parked. They immediately investigated, ordered defendant to step out of his car, and asked him what he was doing. He stated that he had become lost while going to meet a friend at a nearby grocery; that he had become confused by all the detours in the area and "was just sitting there trying to think it over." Noticing a black bag in the back seat of defendant's automobile, Officer Land asked defendant to show it to him, and defendant opened it. Defendant stated that there was "just a bunch of old clothes" in the bag. In it the officers found a .22-caliber revolver, a T-shirt, and three red bandanas. Defendant was then handcuffed and placed in the officers' car, and the search was continued. It revealed a .380-caliber automatic pistol under the front seat; some bank books, later found to belong to a robbery victim; an extra 1960 license plate; and a key to a room in a Minneapolis hotel.

Thereafter, an information was filed, charging defendant with the commission of robbery in the first degree on one Edward A. Sloane on April 16, 1960. Sloane at that time had been confronted by two men wearing bandanas over their faces and carrying guns, who forced their way into his St. Paul apartment and compelled him to open a safe, from which they obtained $7,200 in cash, $1,400 in traveler's checks, and jewelry which had belonged to Sloane's wife. The men also took the purse of a friend visiting Sloane. The purse contained the bank books and the hotel-room key found in the defendant's car.

Defendant was tried, found guilty as charged in the information, and sentenced to a mandatory term in the State Prison. On this appeal from the judgment of conviction, defendant seeks reversal on the following grounds: (1) That no probable cause existed either for the search of his automobile or for his arrest; (2) that the rule announced by the United States Supreme Court in Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081, 84 A. L. R. (2d) 933, rehearing denied, 368 U. S. 871, 82 S. Ct. 23, 7 L. ed. (2d) 72, applies retroactively and prohibited admission of evidence obtained from the search of defend-

ant's automobile;[1] and (3) that his counsel's failure to move to suppress the evidence prior to his trial does not affect the application of the Mapp rule.

The state contends that the acts of the arresting officers in searching defendant's automobile did not violate a right of privacy because there existed at the time reasonable grounds for arrest, search, and seizure. The state also contends that no timely application was made to suppress and return the evidence thus gained by the state and, unless such application is made at the earliest possible moment, a claim of illegal search or seizure is waived. The state further contends that the Mapp decision has no application to the facts of this case since the arrest was based upon probable cause and therefore the search and seizure were justified.

 Unreasonable searches and seizures are prohibited by U. S. Const. Amend. IV, which provides:

"The right of the people to be secure in their persons, houses, papers and effects, against *unreasonable searches and seizures*, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." (Italics supplied.)

Minn. Const. art. 1, § 10, contains practically identical language.

The statutory authority of a peace officer to arrest a person without a warrant is found in Minn. St. 629.34, which provides in part:

"A peace officer may, without warrant, arrest a person:

"(1) For a public offense committed or attempted in his presence;

"(2) When the person arrested has committed a felony, although not in his presence;

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

The constitutional mandate requiring "probable cause" and the stat-

---

[1]The Mapp rule is simply that (367 U. S. 655, 81 S. Ct. 1691, 6 L. ed. [2d] 1090, 84 A. L. R. [2d] 942) "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."

utory standard of "reasonable cause" are synonymous. Probable cause for an arrest has been defined to be "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." Garske v. United States (8 Cir.) 1 F. (2d) 620, 623. Reasonable cause has been defined to be "such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." People v. Ingle, 53 Cal. (2d) 407, 412, 2 Cal. Rptr. 14, 17, 348 P. (2d) 577, 580. There is no formula by which to judge the reasonableness of a given case and each must be decided on its own facts and circumstances. Go-Bart Importing Co. v. United States, 282 U. S. 344, 357, 51 S. Ct. 153, 158, 75 L. ed. 374, 382. This was emphasized in Jackson v. United States, 112 App. D. C. 260, 262, 302 F. (2d) 194, 196, as follows:

"We have indicated on many occasions that there are few absolutes in the area of the law dealing with what constitutes probable cause for arrest. *We have also emphasized from time to time that probable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest.* The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested. Bell v. United States, 102 U. S. App. D. C. 383, 254 F. 2d 82, cert. denied, 358 U. S. 885, 79 S. Ct. 126, 3 L. ed. 2d 113 (1958)." (Italics supplied.)

To require a high degree of technical competency on the part of the average police officer, i.e., that expected of the prosecutor, would be an unfair and unreasonable standard. The degree which we think correct is well stated in Brinegar v. United States, 338 U. S. 160, 176, 69 S. Ct. 1302, 1311, 93 L. ed. 1879, 1890, where the court held:

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the

law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. *The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.*" (Italics supplied.)

■ Constitutional protection extends beyond the home; thus one's automobile is equally protected against unlawful searches and seizures. Dalton v. State, 230 Ind. 626, 105 N. E. (2d) 509, 31 A. L. R. (2d) 1071; Evans v. State, 34 Okla. Cr. 173, 245 P. 912. Therefore, a search warrant is necessary where obtaining it is reasonably practical. Hart v. United States (10 Cir.) 162 F. (2d) 74. When an automobile may be searched without a warrant is a particularly important question for Minnesota police officers since they determine at their own risk the reasonableness of such a search. United States v. Kaplan (S. D. Ga.) 286 F. 963, 978; Minn. St. 613.53 and 621.17.

Due to its mobility the rules governing the search of an automobile and of a home are substantially different. In Carroll v. United States, 267 U. S. 132, 153, 45 S. Ct. 280, 285, 69 L. ed. 543, 551, the United States Supreme Court recognized this distinction by stating:

"* * * the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."[2]

---

[2] It would appear that in the Carroll case the court had adopted a broad

The liberal rule, enunciated in the Carroll case, was limited in Henry v. United States, 361 U. S. 98, 104, 80 S. Ct. 168, 172, 4 L. ed. (2d) 134, 140, wherein it was stated:

"The fact that the suspects were in an automobile is not enough. Carroll v. United States, *supra*, liberalized the rule governing searches when a moving vehicle is involved. But that decision merely relaxed the requirement for a warrant on grounds of practicality. It did not dispense with the need for probable cause."

Thus, the principal question in this case is simply whether probable cause existed for Harris' arrest and the search of his auto. We have reviewed numerous decisions in order to establish the broad limits of varying facts and circumstances which have ultimately been held to constitute probable or reasonable cause. The following cases are illustrative of the general principles involved: Williams v. State, 230 Ark. 574, 323 S. W. (2d) 922; People v. Lewis, 187 Cal. App. (2d) 373, 9 Cal. Rptr. 659; People v. Wells, 187 Cal. App. (2d) 324, 9 Cal. Rptr. 384; Joyner v. State, 157 Fla. 874, 27 So. (2d) 349; State v. Giles, 254 N. C. 499, 119 S. E. (2d) 394; Patenotte v. United States (5 Cir.) 266 F. (2d) 647; Pegram v. United States (6 Cir.) 267 F. (2d) 781; Ray v. United States (10 Cir.) 206 F. (2d) 796; United States v. Gaither (D. Del.) 209 F. Supp. 223; Silver v. State, 110 Tex. Cr. 512, 8 S. W. (2d) 144, 60 A. L. R. 290; State v. Taft, 144 W. Va. 704, 110 S. E. (2d) 727.

In People v. Mickelson (Cal. App.) 26 Cal. Rptr. 152, a po-

rule of practicality allowing the stopping and searching of autos at will. This motion was rejected by Mr. Justice Jackson in United States v. Di Re, 332 U. S. 581, 68 S. Ct. 222, 92 L. ed. 210, wherein he asserted that the language of the Carroll case could be considered as merely providing a distinction between the search of an auto and the search of a home. In United States v. Rabinowitz, 339 U. S. 56, 66, 70 S. Ct. 430, 435, 94 L. ed. 653, 660, the court expressly overruled Trupiano v. United States, 334 U. S. 699, 68 S. Ct. 1229, 92 L. ed. 1663, in so far as that case required a search warrant solely on the basis of the practicality of obtaining it. See, also, Johnson v. United States (4 Cir.) 199 F. (2d) 231, certiorari denied, 345 U. S. 905, 73 S. Ct. 641, 97 L. ed. 1342.

lice officer while on patrol was given the description of a person wanted for robbery. A short time later the officer noticed an auto in which two men were riding, one of whom fitted the description. The car was being driven in a manner indicating that the driver was either trying to evade the officer or was lost and confused. The officer saw the passenger in the car bend over and appear to place something under the front seat. He stopped them and checked the driver's license. Another officer who had come to the scene looked into the auto and noticed an overnight bag protruding from under the seat, directly underneath where the passenger (defendant) had been sitting. The officer removed the bag and asked what was in it, and the driver replied that it contained basketball equipment. The officer opened the bag and found, among other things, money and tools which were later connected with the burglary. On defendant's appeal from a conviction, the court held the search and seizure proper, saying (26 Cal. Rptr. 156):

"* * * Because of (1) the similarity between the description of the robber of the market which the officer had previously obtained and the appearance of the driver of the vehicle as observed by the officer; (2) the possibility that the driver of the vehicle was attempting to evade the officer; (3) the furtive act of defendant in bending over and appearing to place something under the seat, as the officer was overtaking the suspect vehicle; and (4) the lateness of the hour (approximately 2:00 a. m.), Officer Matheson was reasonably justified in stopping the vehicle and interrogating the occupants. * * *

"In the course of such investigation, it was certainly reasonable and proper for the officer to determine what, if anything, the defendant had placed under the seat of the automobile, * * *. To that end the officer was entitled to investigate the contents of the overnight bag that was partially under the seat that defendant occupied."

In People v. One 1955 Ford Victoria, 193 Cal. App. (2d) 213, 13 Cal. Rptr. 910, it appears that an officer was on duty in a felony car detail in an area having a high crime rate early in the evening. He noticed a car parked at an angle on the wrong side of the street and stopped to investigate. The passenger in the car moved over, under the

wheel, and got out, leaving the door open. The officer asked for identification which was produced. The owner of the car then appeared from a nearby home and identified himself. Both men appeared nervous. The officer then looked into the car and saw two brown paper bags and noticed that they were wrapped in a manner that he recognized was often used in wrapping narcotics. He reached into the auto and took one of the bags, and asked the owner "if this was what [he] thought it was." The owner then admitted that it contained narcotics. In holding the search lawful, the court stated (193 Cal. App. [2d] 215, 13 Cal. Rptr. 911):

"It may well be that a number of circumstances combine to create a strong suspicion, each of which, if operating alone, would justify no more than a mild suspicion. Here, the officer was aware that the driver of the car had not taken time to park it either parallel with the curb or to make a turn to park it on the right side of the street. He was told that the owner would be back in a minute. The passenger, who had hurriedly slid across the car's seat, and alighted, was jittery. So was the owner when he came out. Nervousness may be explained away, of course, but it has been noted among circumstances being taken into consideration."

■ Police officers may not ordinarily make searches upon apprehending motorists for simple traffic violations or upon the slightest hint of illegality. We agree with the rule enunciated by the Oklahoma Criminal Court of Appeals in Brinegar v. State, 97 Okla. Cr. 299, 315, 262 P. (2d) 464, 480:

"We would make it clear that not every arrest of a motorist for a traffic violation would justify a search of the seats and glove compartment for weapons. There must be facts and circumstances observed by the officers to cause them in good faith to believe that the motorist is armed, is dangerous, or apparently intends to escape."

■ Searches which are "exploratory and general and made solely to find evidence of * * * guilt," United States v. Lefkowitz, 285 U. S. 452, 465, 52 S. Ct. 420, 423, 76 L. ed. 877, 883, are invalid. However, as stated in Hargus v. State, 58 Okla. Cr. 301, 302, 54 P. (2d) 211, 212,

quoted with approval in State v. Chronister (Okla. Cr.) 353 P. (2d) 493:

"For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed."

■■■ We think that the circumstances under which Officers Land and Marchiniak approached Harris' car meet the above test. The fact that it was late in the evening; that Harris' car was parked at an odd angle; that it was backed up quite close to the boat and trailer parked in the driveway; that Harris offered an improbable reason for being in the area, all combined to raise a reasonable inference that the situation should be given careful investigation. The arrest took place when the policemen ordered Harris from the car, i. e., when the officers interrupted him and restricted his liberty of movement. Henry v. United States, 361 U. S. 98, 103, 80 S. Ct. 168, 171, 4 L. ed. (2d) 134, 139. The arrest being based upon probable cause, we can conclude only that the search made incident to it was also lawful.

■ Further, we find no evidence that defendant objected to the search. Failure to object to a search is evidence of consent, Castaneda v. Superior Court (Cal. App.) 26 Cal. Rptr. 364; and consent itself constitutes a waiver of defendant's right to object later that the search was unreasonable. City of St. Paul v. Stovall, 225 Minn. 309, 312, 30 N. W. (2d) 638, 641; cf. Honig v. United States (8 Cir.) 208 F. (2d) 916.

The burden of proving lack of consent, i. e., unlawful search and seizure, is upon the defendant, Nardone v. United States, 308 U. S. 338, 60 S. Ct. 266, 84 L. ed. 307; White v. United States (5 Cir.) 194 F. (2d) 215, since the officers are presumed to have acted properly. United States v. Warrington (N. D. Cal.) 17 F. R. D. 25, 29; People v. Du Bois, 31 Misc. (2d) 157, 221 N. Y. S. (2d) 21, 27; People v. Koebel, 35 Misc. (2d) 169, 228 N. Y. S. (2d) 586, 587. The testimony indicates that while defendant was in effect under arrest

he was asked by the police officers for permission to see the bag which contained a revolver and the bandanas, and that he consented to the officers' search. He does not deny that he gave his consent nor does he claim duress or coercion, although he claims he was merely submitting to "the color of police authority." His consent is a question of fact which may properly be resolved in favor of the state.

Defendant relies upon Henry v. United States, *supra*. There it was held that the actions of two officers in stopping and searching defendant's auto, which contained stolen radios, were not based upon probable cause and the search and seizure were therefore illegal. That case is distinguishable because it involved a substantially different factual situation and there was no consent to the search and seizure, as there was here.

■ Defendant's final contentions (1) that the Mapp decision applies retroactively, and (2) that counsel's failure to act to suppress the evidence obtained in the search should not prejudice his cause, will not be considered since we have determined, as a matter of law, that probable cause existed for Harris' arrest. The existence of probable cause is ordinarily a judicial question. Jenkins v. State, 116 Tex. Cr. 374, 32 S. W. (2d) 848; cf. State v. Pluth, 157 Minn. 145, 148, 195 N. W. 789, 790. But see, Cochran v. Toher, 14 Minn. 293 (385), where the court held, in an action for false imprisonment, that the nature of the circumstances of the case dictates whether probable cause is a question for the court or the jury.

The reason for holding the existence of probable cause to be a question for the court was stated in People v. Gorg, 45 Cal. (2d) 776, 781, 291 P. (2d) 469, 472, as follows:

"* * * The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue. Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt, [citation omitted] evidence that was otherwise inadmissible and

prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure."

Defendant's conviction is affirmed.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.