**UNITED STATES of America,**
**Libelant,**

v.

**ONE 1963 CADILLAC HARDTOP,**
**Motor No. 63 G 007901.**

**No. 63–C–92.**

United States District Court
E. D. Wisconsin.

Dec. 13, 1963.

James B. Brennan, U. S. Atty., by William J. Mulligan and Franklin M. Gimbel, Asst. U. S. Attys., for libelant.

Dominic H. Frinzi, James M. Shellow, Milwaukee, Wis., for claimant.

GRUBB, District Judge.

The United States of America initiated a libel proceeding against a certain 1963 Cadillac, seeking its forfeiture pursuant to the provisions of Title 49, Section 782, of the United States Code of Laws. Claimant has moved this court to suppress certain evidence alleged to have been illegally seized. On August 29, 1963 (220 F.Supp. 841), this court decided that a civil forfeiture proceeding is in the nature of a criminal sanction, and therefore a motion to suppress may be brought as in a criminal prosecution.

On February 10, 1963, at approximately 7:50 A.M., Officer John Randa of the Narcotics Detail, Milwaukee Police Department, received an anonymous telephone call. The caller stated that "Matthew Crumble has got narcotics at Bibbs' house." After this call, Officers Randa, Thelen, and Budnowski proceeded in an unmarked squad car to Bibbs' residence located at 3223 West Center Street. Nothing was observed there or in the immediate neighborhood.

While driving back to the police station, the officers recognized the vehicle, which is the subject of the instant action, as a vehicle which Matthew Crumble had been known to drive on prior occasions. As the vehicle approached them, it turned south on North 15th Street. The squad car likewise turned south and had followed it one block when the officers observed a violation of an arterial stop at the corner of North 15th Street and West Kilbourn Avenue. The squad car continued to follow the Cadillac east on Kilbourn Avenue and then north on 14th Street. The Cadillac was stopped just south of the intersection of North 14th and West State Streets. Officers Randa and Thelen proceeded to the driver's side of the car. Officer Budnowski went to the passengers' side of the car. The three occupants of the car were all known to the officers. Richard Ashley O'Neil was the driver, Alberta Daigre was seated in the center of the front seat, and Matthew Crumble was seated to her right. The occupants of this automobile were known or suspected narcotic users. The following events then occurred:

1. Mr. O'Neil was informed that he had violated an arterial stop sign and was asked to produce his driver's license. He was either ordered from the car or got out voluntarily.

2. Alberta Daigre was behaving in an obnoxious and abnormal manner.

3. Officer Budnowski either ordered or asked the passengers, Crumble and Daigre, to get out of the car.

4. As Crumble alighted from the passengers' side, Officer Thelen observed an aluminum foil packet fall from his hand to the floor of the car immediately behind the front seat.

5. The packet was immediately recovered, and all three occupants of the car were arrested for possession of narcotics. Subsequently a marijuana cigarette was found by Officer Randa behind the driver's seat. The aluminum foil packet contained a substance thought by the officers and Crumble to be marijuana.

Attorneys for the claimant have moved this court for an order suppressing the packet, its contents, and the cigarette for use as evidence in this libel proceeding. Claimant makes the following contentions:

1. The search was unreasonable because it was made without a search warrant and not incidental to the traffic arrest.

2. The search was unreasonable because it was not supported by probable cause.

■■■ The search in question was conducted by state officers, and the evidence is sought to be used in a federal court in a civil action which possesses the characteristics of a criminal sanction. Federal standards must therefore be applied. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The constitutionality of any such search ultimately rests upon the reasonableness of the search. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). That criterion in turn depends upon the facts and circumstances —the total atmosphere of the case. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Basically then, the problem is a factual one. See United States v. Harris, 321 F.2d 739 (6th Cir. 1963).

The arrest in this case was an arrest for an arterial stop sign violation. Claimant contends that a search of the vehicle and its occupants under circumstances which provided no indication of threat or harm or escape by use of concealed weapons cannot conceivably be said to be an incident of the arterial stop sign arrest. Therefore, the search is claimed to be unreasonable and not the incident of a valid arrest.

■■■ If an arrest is a sham or front for making a search, the arrest and the ensuing search are illegal. Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Likewise, a minor traffic violation will not generally justify a search of the vehicle and its passengers. This principle has been recognized by many courts. See Byrd v. State, 80 So.2d 694 (Fla.1955); People v. Zeigler, 358 Mich. 355, 100 N.W.2d 456 (1960); United States v. Tate, 209 F.Supp. 762 (D.Del.1962); People v. Mayo, 19 Ill.2d 136, 166 N.E.2d 440 (1960). The judicial guidelines are, however, by no means clear. The Supreme Court, speaking through Mr. Justice Frankfurter, pointed this out:

"We take as a starting point the cases in this Court dealing with the extent of the search which may properly be made without a warrant following a lawful arrest for crime. The several cases on this subject in this Court cannot be satisfactorily reconciled. This problem has, as is well-known, provoked strong and fluctuating differences of view on the Court. This is not the occasion to attempt to reconcile all the decisions, or to re-examine them. Compare Marron v. United States, 275 U.S. 192 [48 S.Ct. 74, 72 L.Ed. 231], with Go-Bart Co. v. United States, 282 U.S. 344 [51 S.Ct. 153, 75 L.Ed. 374], and United States v. Lefkowitz, 285 U.S. 452 [52 S.Ct. 420, 76 L.Ed. 877]; compare Go-Bart, supra, and Lefkowitz, supra, with Harris v. United States, 331 U.S. 145 [67 S.Ct. 1098, 91 L. Ed. 1399], and United States v. Rabinowitz, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653]; compare also Harris, supra, with Trupiano v. United States, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], and Trupiano with Rabinowitz, supra (overruling Trupiano). Of these cases, Harris and Rabinowitz set by far the most permissive limits upon searches incidental to lawful arrests. * * *" Abel v. United States, 362 U.S. 217, 235, 80 S.Ct. 683, 4 L.Ed. 2d 668 (1960).

■ There is a common thread running through all cases upholding a search without a warrant. The searcher must have in mind some reasonably specific thing he is looking for and reasonable grounds to believe it is in the place being searched. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Rabinowitz,

339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Abel v. United States, 363 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). At the outset, the objectives of the search must be incidental to the particular arrest. In the case of a stop sign violation, there is no fruit of the crime. The means whereby the crime was committed is the vehicle itself. Further, there is no contraband associated with such a violation. The arrest must provide the reasonableness. To hold otherwise would do violence to the very protection that the constitutional requirements of the fourth amendment are designed to afford.

██ It is claimant's position that the search began when Crumble and Alberta Daigre were ordered from the automobile by Officer Budnowski. It is claimed that this act of ordering the passengers out of the car constituted an arrest and the first step in conducting the search. In the absence of any showing of a reasonable apprehension of harm or an attempted escape, the claimant contends that the search by the officers was not one incidental to this traffic arrest. This conclusion does not follow. The mere ordering from the car did not constitute the beginning of a search of the car itself. Such action might be said to constitute an arrest, since the order effectively restricted the parties' liberty of movement. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); State v. Harris, 265 Minn. 260, 121 N.W.2d 327 (1963). Assuming that the order in fact constituted an arrest, the question then is whether this arrest without a warrant was based on probable cause so as to support the officers' action. Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Probable cause exists if the facts and circumstances known to the officers warrant a prudent man in believing that the offense has been committed. Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035 (1878); Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Claimant brushes aside the following pertinent facts bearing on probable cause:

1. The police officers recognized the three occupants of the car as known or suspected narcotics law violators.

2. The officers knew that Alberta Daigre was a user of certain drugs such as sodium pentothal, nembutal, and other dangerous drugs, and had been committed previously because of this.

3. Alberta Daigre was acting in an obnoxious and abnormal manner. The officers could reasonably have believed that at least she was under the influence of narcotics and that the others may have had some also.

If the facts were merely that the officers had conducted a search of the automobile and its occupants following an arterial stop sign violation, claimant would be correct in her assertion that the search was not an incident of the arrest, but the facts show more here. The subsequent search was not made in response to the traffic arrest. Rather, the passengers were ordered out of the car in response to a situation which then and there presented itself—one which was not tied to the traffic arrest. In light of all the facts at the time Officer Budnowski ordered the passengers from the automobile, there were reasonable grounds to believe that a known drug user was under the influence of drugs. Claimant contends that the police cannot construct probable cause upon suspicious behavior which they themselves instigate. In support of this proposition, they cite Wong Sun v. United States, 371 U.S. 471, at page 484, 83 S.Ct. 407 at page 415, 9 L.Ed.2d 441 (1963), the court stating:

> "A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked. * * *"

Neither the case nor the cited portions appears to be in point as applied to the facts here. Claimant has made no showing that the police officers instigated the suspicious behavior. All they did was stop the car for a traffic violation. Having legitimately stopped the car, they observed the suspicious conduct on the part of Alberta Daigre, a known user of drugs. For some unexplained reason, counsel for the claimant feel that since Alberta Daigre had been a police informer on at least one previous occasion, her behavior on this day takes on a different coloration mitigating any inference which the officers might otherwise justifiably draw from her conduct in their presence. The fact that she had previously been a police informer is entirely irrelevant here.

■ The facts, as evidenced by the record, are not complicated. The officers stopped the car in question and arrested its driver for a traffic violation. Alberta Daigre, a known user of drugs, was acting in an obnoxious and abnormal manner. The other two parties in the car were suspected narcotics law violators. One of the officers then ordered the two passengers out of the car. At this point in the sequence of events, the officers had acted in a proper manner under the circumstances as they had presented themselves and had probable cause for their action.

Since ordering the passengers out of the car was a proper action, the subsequent search and recovery of the marijuana packet and cigarette are beyond challenge. The officers here were experienced vice squad officers who were familiar with narcotic law violations. In their work they had found that aluminum or tin foil is a common wrapper for many narcotic drugs. Thus, when Officer Thelen saw Matthew Crumble drop an aluminum foil packet from his hand, there was more than probable cause for the officers, and more specifically Officer Thelen, to believe that a crime—that of possession of narcotics—was being committed in their presence, therefore justifying the picking up of the aluminum foil package from the floor of the car immediately behind the front seat and a further search of the car's interior.

At the time of the search of the automobile, the officers had reasonable cause to believe that the narcotics law was being violated and to make an arrest and search without a warrant, not on account of the traffic violation but on account of what they had observed following the traffic violation.

The motion to suppress is hereby denied.