**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James W. ERWIN, Defendant-Appellant.**

No. 74–2672.

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1975.

938

Charles D. Butts, Fred A. Semaan, San Antonio, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., W. Ray Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.

DYER, Circuit Judge:

James Erwin was convicted for possessing an unregistered sawed-off shotgun. He challenges the conviction on two grounds: first, that the shotgun evidence should have been suppressed because both arrest and search were invalid, and second, that the evidence of possession was insufficient to sustain his conviction. We hold that the motion to suppress should have been granted because the search was invalid, and therefore find it unnecessary to consider the sufficiency of the evidence.

While investigating the "pornography industry," state and county officers made a legal search of a local theater and obtained information that Erwin was an officer in a corporation which distributed allegedly obscene movies. Based upon this information, they secured a warrant for Erwin's arrest. On September 19, 1973, police, including San Antonio police officer Brown and district attorney's investigator Collins, executed the warrant. They arrested another member of the alleged conspiracy to distribute obscene materials outside the apartment where both he and Erwin were staying. When police entered the apartment, Erwin and a Ms. Roquemore were seated on a couch in the living room watching television. Erwin was placed under arrest, and Collins made a cursory search of the rest of the apartment to see if anyone else was there. He found no one, and testified that Erwin and Ms. Roquemore posed no threat. They were not handcuffed or otherwise restrained, but if they wandered about, they were always accompanied by Officer Brown. When Erwin went to the back bedroom which he had been occupying to get a shirt and shoes, Officer Brown accompanied him and confiscated a pistol from the bedside table. They returned to the living room and Brown told Collins about the pistol. Investigator Collins then went back to the bedroom, where he discovered the shotgun on a shelf in the open closet. It was the second search, the one which produced the contraband item, which we now hold was illegal.

If either the arrest or the search were unlawful, the motion to suppress should have been granted. Here we assume without deciding that the arrest was lawful, in spite of a concededly defective warrant, because the officers had probable cause to believe that Erwin was involved in the conspiracy. Chimel v. California, 1968, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; United States v. Morris, 5 Cir. 1973, 477 F.2d 657, 663. However, even assuming that the arrest was lawful, we find no justification for the weapon-producing search. The government attempts to justify it both as a search "incident to arrest" and as the seizure of an object in "plain view." Neither of these theories, however, is applicable to the search in question.

In considering whether a warrantless search is properly "incident to arrest," the inquiry focuses on the scope of the search. Vale v. Louisiana, 1970, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409. Such searches are allowed only to prevent the arrestee's seizing a weapon or destroying evidence. The basic philosophy of Chimel controls: a search incident to arrest is limited to the person of the arrestee and to the area under his immediate control, from which he might be able to reach a weapon or evidence. It has never justified a general or exploratory search. In fact, aside from the

cursory search for other persons, there is no justification for "routinely searching any room other than that in which an arrest occurs." Chimel v. California, *supra,* 395 U.S. at 763, 89 S.Ct. at 2040.

■ Similarly, for a seizure to be constitutionally reasonable under the "plain view" theory, the officer must lawfully be in a place from which he sees a seizable item in plain view. He must have had

a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. Coolidge v. New Hampshire, 1971, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564.

The Supreme Court has made it clear that the plain view doctrine may not be used "to extend a general exploratory search from one object to another until something incriminating at last emerges." *Id.* Yet this is precisely what Collins did. Upon finding the pistol, he extended the exploratory search until he found the incriminating shotgun.

In order to determine whether Investigator Collins, who seized the shotgun, had a legally justifiable reason for being where he was, we need only look to his testimony. Collins testified as follows:

Well, this being the third or the second weapon that had been found, *I decided I better check for more weapons.* There was a third party there, Miss Kathy Roquemore, and we didn't know but what she had a weapon, and so I went back into the bedroom and I glanced up in an open closet, and there was a box of 410 shotgun shells on the shelf. (Emphasis supplied)

On cross-examination, Collins was asked why, if the defendant posed no threat,

he, Collins, chose to go back to the bedroom a second time. He replied: "I went there to see if any other weapons were there." Asked by what authority he made this second search, he replied, "just common sense. . . . I felt it was necessary to determine whether or not there was any further threat after we left." Asked how they could be threatened after they left, he responded: "This Kathy Roquemore would still be there. We didn't have a warrant for her." And who would be left for her to shoot? Collins could only reply that he did not know.

■ This testimony by the government's own witness is fatal to its case. Collins admits that he was searching in the bedroom for other weapons, even though Erwin was· in the living room and constantly attended by Officer Brown. Erwin posed no threat, and in no way could the gun be said to have been within his reach. Collins knew there were no other persons in the apartment, so there could be no reasonable fear of anyone else using a weapon or destroying evidence. Nor can the search be justified by the fact that Erwin was not handcuffed and was free to roam about. There is no question that Erwin was under arrest, and it was entirely in police discretion how far his movement would be restricted. They cannot allow the arrestee freedom of movement, and then later use that freedom to justify an exploratory search of the dwelling. Any argument as to whether the gun was in "plain view" is irrelevant if the officer was not lawfully in the room being searched. After having made a cursory check for other persons, Collins had no lawful reason for returning to the back bedroom to search further. The evidence garnered on the illegal search should have been suppressed.

Reversed.