STATE of Minnesota, Respondent,

v.

Bruce Edward WILLIS, Appellant.

No. 46395.

Supreme Court of Minnesota.

July 28, 1978.

C. Paul Jones, Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, David W. Larson and Lee Barry, Asst. County Attys., Minneapolis, for respondent.

Heard before PETERSON, SCOTT, and GODFREY, JJ., and considered and decided by the court en banc.

OTIS H. GODFREY, Jr., Justice.*

Defendant was convicted in June 1975 by a district court jury of burglary and aggravated rape [Minn.St.1974, § 609.291(2)]. He was thereafter sentenced to serve concurrent terms on the two criminal charges to be served consecutively with prior sentences on burglary and receiving stolen property, for which probation was revoked. Defendant has appealed the convictions on the grounds that there was an unconstitutional search and seizure of his apartment at the time of his arrest, and that certain statements made by defendant were erroneously admitted in evidence during trial. We affirm.

Defendant was arrested by Minneapolis police officers on the evening of February 13, 1975, within minutes of a reported burglary and rape at knifepoint. The victim described her assailant as a short black man, wearing a black leather jacket, dark pants, and "wooly" gloves. He had a nylon pantyhose over his head.

After the rapist left her apartment, the victim found that the cord to her telephone had been cut, so she ran to the caretaker's apartment to summon the police. The radio dispatcher broadcast that a rape had occurred near 22nd St. and Pillsbury Ave. and the police responded. As Officers Kopplow and Palmer were traveling east on 28th Street, in the vicinity of the incident, they observed a taxi discharge a short black man with bushy hair, wearing a shiny jacket. They waited for the taxi and stopped it a block away. While the officers were talking to the cab driver, a description of the assailant went out over the police radio—A Negro male in his 20's, about 5 feet 4 inches tall, bushy hair, short mustache, wearing a leather jacket and possibly green pants. This matched the description of the man who had just left the taxi and had entered a nearby apartment. The cab driver told the officers that he had gone into the building in order to collect his fare and that the passenger had had a conversation with someone else in his apartment. He had picked up his fare within 3 blocks of the incident.

The police officers immediately went to the apartment, knocked on the door, and it was opened by defendant. They promptly arrested him, just inside the doorway, where he remained with one of the officers. The two other patrolmen searched the apartment for the purpose of finding the other person said by the taxi driver to have been present.

No other occupant was found, but in the course of their search the officers found in

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

plain sight a pair of pantyhose on a shelf, two nail files (one with a small handle), and a pair of dark colored knit gloves. Meanwhile, the officer who had remained with defendant opened a large closet near the front door and observed two leather jackets.

Much of the evidence presented during the trial was the result of laboratory tests and analysis by the State Bureau of Criminal Apprehension on blood types and groupings of the victim and defendant, hair samples, and semen samples. Some of the matters tested were taken from the jacket, gloves, and pantyhose seized in defendant's apartment, while others came from the victim herself or from items found in her apartment. All the test results were consistent with the charge that defendant was the assailant. When shown a group of photographs by the police, the victim was unable to make positive identification, although she paused and commented about defendant's picture. His physical characteristics are similar to the original description given to the police. The jury returned a verdict of guilty on the charges of burglary and aggravated rape, the latter being under the then statute § 609.291(2).

Three issues are presented for our review:

(1) Was there probable cause to arrest defendant?

(2) Were the constitutional rights of defendant violated by the search and seizure of his apartment at the time of his arrest?

(3) Was it error to admit defendant's statements, made prior to his having been informed of his constitutional rights, when no objection was made at the time of trial?

■ 1. The police officers clearly had probable cause to arrest defendant. Other rapes had occurred in the area, and the suspect had been described as a short Negro male. Defendant was observed by the officers getting out of a taxi which had picked him up within 2 blocks of the rape and burglary and almost immediately after the event. His physical appearance and clothing furthermore matched the description given by the victim.

This court held in *State v. Sorenson*, 270 Minn. 186, 196, 134 N.W.2d 115, 122 (1965), that probable cause for an arrest is a " 'reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.' *Garske v. United States* (8 Cir.) 1 F.2d 620, 623."

Under Minn.St. 629.34(3), a police officer may arrest a person without a warrant when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. We have held that "reasonable cause" and the "probable cause" required by the Fourth Amendment are synonymous. *State v. Harris*, 265 Minn. 260, 121 N.W.2d 327 (1963).

Each case, of course, must be decided on its own particular facts. The arresting officer must be guided by his experience and observation but he need not have enough evidence to sustain a conviction. Here, the police officers were in fresh pursuit of a man suspected of committing a violent crime and had ample probable cause to arrest defendant without a warrant.

■ 2. A closer question is presented concerning the items seized as a result of the search of the defendant's apartment at a time when he was already under arrest. Police officers are faced daily with the necessity of making instantaneous decisions while frequently under stress and subject to threats to their personal safety. Here, they had been told by the cab driver that some other individual had been present in the apartment just minutes before the arrest of defendant. The officers were justified in making a protective search of the premises to determine if another person was then present, armed or otherwise. As we held in *State v. Houff*, Minn., 243 N.W.2d 129, 133, "[t]he test is not whether it would have been reasonable for the police to obtain a search warrant, but whether they acted reasonably in proceeding without one." See, also *State v. Smith*, Minn., 261 N.W.2d 349 (1977), where this court found that the

plain-view doctrine applies when the initial intrusion is legal.

Under the facts of this case, we hold that the police officers' entry and search of defendant's apartment were justified and legal. Any items observed in plain sight or in place where an individual could have been in hiding were therefore admissible in evidence. This case is clearly distinguished from *State v. Mitchell*, 285 Minn. 153, 172 N.W.2d 66 (1969), where the search was conducted of an upstairs bedroom, wholly unrelated to the arrest.

3. During the trial, a police officer testified regarding statements made by defendant after his arrest, but before he had been advised of his right to remain silent. In response to questions, the defendant said he had been at a friend's house earlier that evening and that he had walked home. He denied being in any cab. No objection was made by defense counsel to the introduction of this evidence at either the *Rasmussen* hearing or at trial. Appellant argues that because objection was made at the preliminary hearing in municipal court, his objection is preserved.

■■■ The function of a preliminary hearing is to determine only whether sufficient evidence has been produced to establish probable cause for holding the defendant on the charge. It is not a trial. *State v. Schwartz*, 266 Minn. 104, 122 N.W.2d 769 (1963). Any objections to the introduction of evidence would have to be made at the time of trial. Perhaps defendant's attorney chose not to do so because the statements appear to be exculpatory. In any event, the fundamental rule is that this court will not decide issues which are raised for the first time on appeal. See, *State v. LaBarre*, 292 Minn. 228, 195 N.W.2d 435 (1972); *State v. Bosnich*, 273 Minn. 553, 142 N.W.2d 63 (1966).

We have reviewed the other grounds cited in this appeal. The testimony complained of, that of a laboratory analyst with the Bureau of Criminal Apprehension, was brought out on cross-examination by defense counsel. Considering all the evidence as a whole, the error, if any, is harmless and not sufficient to warrant a new trial.

Affirmed.

WAHL, Justice (dissenting).

I respectfully dissent. I am concerned that the majority's broad approval of sweep searches jeopardizes well-established Fourth Amendment guarantees.

Here, three police officers responded to a rape report describing a single assailant and arrested defendant as he opened his apartment door. The defendant was placed against the wall and closely guarded by one officer. The other officers swept through the rest of the apartment, looking for another person overheard by the cabdriver as a male or female "young voice." As a consequence of this "protective search," the police seized a pair of pantyhose found in a bedroom closet, two nail files found lying atop a bedroom television set, a pair of blue knit gloves found on the kitchen refrigerator, and a leather coat hanging in the closed entryway closet.

The "most basic constitutional rule" in this area is that warrantless searches are *per se* unreasonable under the Fourth Amendment, and the results of the search thereby inadmissible, unless the state can come within one of "a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). Upon examination of the circumstances of the instant case, I am not persuaded that the search was within permissible constitutional limits. Accordingly, I would suppress the seized evidence and reverse the conviction.

The permissible constitutional limits of a warrantless search incident to an arrest were clearly defined in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). There, the Supreme Court invalidated the search of a burglary suspect's residence immediately following his arrest there by three police officers. The court reviewed prior decisions on the scope of a

search incident to the arrest, remarking that attempts to evaluate such searches under a vague standard of "reasonableness" were "founded on little more than a subjective view regarding the acceptability of certain sorts of police conduct, and not on considerations relevant to Fourth Amendment interests. Under such unconfined analysis, Fourth Amendment protection in this area would approach the evaporation point." 395 U.S. 764, 89 S.Ct. 2041, 23 L.Ed.2d 695. The court held:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching any

1. The majority's attempt to distinguish *State v. Mitchell, supra,* on the basis of the extent of the search, is not persuasive. As the court in *Chimel* observed:

"It would be possible, of course, to draw a line between [*United States v.*] *Rabinowitz,* [339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950)] and *Harris* [*v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947)] on the one hand, and this case on the other. For *Rabinowitz* involved a single room, and *Harris* a four-room apartment, while in the case before us an entire house was searched. But such a distinction would be highly artificial.

room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." 395 U.S. 751, 89 S.Ct. 2040, 23 L.Ed.2d 694.

The rule of *Chimel,* applicable in state court proceedings via *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), has heretofore been carefully applied in the decisions of this court. See, e. g., *State v. Cox,* 294 Minn. 252, 200 N.W.2d 305 (1972). See, also, *State v. Mitchell,* 285 Minn. 153, 172 N.W.2d 66 (1969) (invalidating a pre-*Chimel* search of an entire residence incident to an arrest.)[1]

Nor do I find sufficient "exigent circumstances" to permit the additional warrantless search conducted here. This was not a hostage situation, *State v. Smith,* 261 N.W.2d 349 (Minn.1977), nor was there an additional, unlocated accomplice who had been implicated in the original crime. See, *State v. Mollberg,* 246 N.W.2d 463 (Minn. 1976). The possible presence of a non-suspect third party in the apartment is in itself insufficient to justify such a search. Both *Chimel, supra* and *Mitchell, supra,* noted that such a third party was present at the time of the arrest and would be left within the premises when the suspect was taken into custody. The state's argument that a search is necessary to protect evidence from possible destruction by a third party friendly to defendant asks too much:

The rationale that allowed the searches and seizures in *Rabinowitz* and *Harris* would allow the searches and seizures in this case. No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other." 395 U.S. 766, 89 S.Ct. 2041, 23 L.Ed.2d 685.

"An adoption of the government's reasoning would result in the evaporation of an arrestee's Fourth Amendment rights. There is almost always a partisan who might destroy or conceal evidence. Under the government's theory, if a man were arrested in New York, it would be perfectly reasonable to search his home in California to prevent his wife's destruction of evidence. Using the same reasoning, the police could return to the scene of arrest, be it home or office, and conduct a search at any time following an arrest. The government's reasoning provides no logical temporal or spatial limitations to the theory of search incident to lawful arrest. We must either reject the government's view or adopt the idea that a person's Fourth Amendment rights cease at the time of arrest. We prefer the former. We conclude therefore that the ability of a third party to destroy evidence does not temporally expand the authority of arresting officers to conduct a search incident to a lawful arrest." *United States v. Davis,* 423 F.2d 974, 979 (5 Cir. 1970); See also, *United States v. Erwin,* 507 F.2d 937 (5 Cir. 1975).

Nor has the state demonstrated any reasonable fear that this male or female "young voice," belonging to an unknown, unsuspected, and unimplicated third party, presented a perceptible risk to the officer's security.

Absent the demonstrated applicability of an established exception, the warrantless search was invalid, and its products should have been suppressed.