## STATE EX REL. ARNOLD D. BRANCHAUD v. KERMIT HEDMAN.*

130 N. W. (2d) 628.

September 25, 1964—No. 39,285.

*John S. Connolly,* for relator.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Gerald E. Rutman,* Special Assistant County Attorney, for respondent, sheriff of Ramsey County.

MURPHY, JUSTICE.

This matter is before us in postconviction proceedings initiated by petition for writ of habeas corpus. Defendant was convicted of the offense of third-degree burglary. The verdict of guilty was returned by the jury on June 14, 1961. On December 7, 1961, an alternative motion for a new trial, judgment of acquittal, or certification to this court was denied and sentence imposed. The sentence was suspended and he was placed on probation for 5 years. No appeal

---

*Certified to U. S. Supreme Court March 30, 1965.

was taken from the judgment of conviction. Proceedings were thereafter instituted in the district court to revoke probation because defendant had violated the terms of the court's order. The violation is predicated upon a subsequent conviction of defendant for the offense of attempted burglary. The conviction in the second case was on October 9, 1963, and after a denial of a motion for a new trial, a sentence of 2 to 5 years was imposed. An appeal has been taken from that judgment. This proceeding was interposed to forestall revocation of the probation order entered at the time the previous sentence was imposed and to test the validity of that sentence. Defendant claims that the evidence used to convict him in that case was the fruit of an illegal search and seizure.

Because no timely appeal was taken from the conviction in the previous case, we would not ordinarily review the asserted errors which defendant now puts forth. However, as we pointed out in State v. Mertz, 269 Minn. 312, 130 N. W. (2d) 631, recent decisions of the United States Supreme Court, Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822, 9 L. ed. (2d) 837, and Sanders v. United States, 373 U. S. 1, 83 S. Ct. 1068, 10 L. ed. (2d) 148, indicate that the principle of res judicata is inapplicable in habeas corpus proceedings. Since the issue raised relates to the asserted denial of due process under the Fourth and Fourteenth Amendments, we accordingly treat the matter as a proceeding in the nature of an application for postconviction relief and proceed to consider the error assigned.

From the fragmentary record which we have, it appears that on the afternoon of May 13, 1961, Mr. and Mrs. Milton Hedin left their home for a weekend trip. On leaving they locked and secured the doors and windows. On returning home the next afternoon, they found that their home had been entered, a door had been broken, articles had been strewn about the premises, a small amount of money had been taken, and their television set was missing. The record further shows that about 9 p. m. on the evening of May 30, 1961, two officers of the St. Paul Police Department were on patrol duty in a vacated area of the city which had been cleared for redevelopment purposes. In going through this area they noticed a car parked

on a side street in a place which would not ordinarily be used for parking. They passed the street and then backed up and turned in. As they did so, they noticed the lights of the parked car being turned on. As they approached the car, the occupant got out and "ran around to the front and lifted the hood." The officers inquired as to his identity and he gave his name as Arnold Branchaud and said that he was having motor trouble. The officers asked to see his driver's license. They noticed that the trunk of the car was secured by a hasp and padlock. They asked if they could look in the trunk and he consented. One of the officers said that defendant opened the trunk. It was the recollection of the other officer that defendant voluntarily surrendered the keys to the first officer and gave him permission to open it. There is no evidence of threats or coercion having been used to induce defendant to surrender the keys to the police or to open the trunk for them. When the trunk was opened, it was found to contain a television set, later identified as the one taken from the Hedin home. When asked where he got the television set, defendant appeared agitated and "was sweating quite profusely even though it was a cool evening, cool enough to wear a jacket." When he was asked why he was sweating, he said to the police officer, "You would be scared too if you were stopped." When asked where the television set came from, defendant gave three contradictory stories, apparently in rapid succession. He was then brought to police headquarters. Thereafter he was charged and convicted of the offense of burglary.

As far as we can gather from the record there is no claim that the television set is not the set which was taken from the Hedin home. We cannot find from the record that a motion was made to suppress the use of the television set as evidence in the trial. The error is predicated upon objection sustained to certain questions asked by defense counsel on cross-examination with reference to whether the police had knowledge of the theft of the television set at the time they accosted defendant. The specific objection to the introduction of the television set as it appears in the record is that "it is immaterial, not relevant, no proper foundation and also on the grounds that it is

evidence that should be excluded on the grounds of the 14th Amendment to the United States Constitution and the section of the Minnesota Constitution dealing with illegal search and seizure."

In the argument before this court it appears to be the claim of defendant that the evidence used against him was the product of an exploratory search without probable cause in violation of his rights under the Fourth and Fourteenth Amendments. It seems to be further urged that since Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081, police officers are not permitted to accost a suspicious character on a public street for questioning. While the Mapp case and numerous decisions recently handed down by the United States Supreme Court clearly establish that under state and Federal procedures citizens are entitled to uniform protection from unreasonable searches and seizures, we do not understand that these decisions have gone so far as to require or suggest that state police officers follow precise procedures in making arrests, searches, and seizures. The Fourth Amendment protects the individual only from "unreasonable" searches and seizures; and whether a search and seizure is "unreasonable" must depend upon the particular facts of each case.

Nor do we feel that the legality of the arrest of defendant is tainted because the police officers accosted and interviewed defendant without actual information that he was carrying stolen property in his automobile.[1] Under the circumstances here, the police officers did

---

[1]Since Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081, there has been considerable judicial and legislative deliberation on the right of police officers to accost and interview persons suspected of illegal conduct. So-called "stop and frisk" statutes have been enacted. New York Code of Criminal Procedure, § 180(a), discussed in 38 St. John's L. Rev. 392; 30 Brooklyn L. Rev. 274; People v. Rivera, 252 N. Y. S. (2d) 458, 201 N. E. (2d) 32; Uniform Arrest Act, enacted in Delaware, New Hampshire, and Rhode Island; Hawaii Rev. Laws 1955, c. 255, §§ 4 and 5; Mass. Ann. Laws 1961, c. 41, § 98. For general discussion of the subject, see, also, State v. Gulczynski, 32 Del. 120, 120 A. 88; Commonwealth v. Lehan, 347 Mass. 197, 196 N. E. (2d) 840; People v. Mickelson, 59 Cal. (2d) 448, 30 Cal. Rptr. 18, 380 P. (2d) 658; People v. Mosco, 214 Cal. App. (2d) 581, 29 Cal. Rptr. 644; People v. Blodgett,

no more than what they were required to do in performance of their duties. In Frye v. United States (9 Cir.) 315 F. (2d) 491, 494, the court pointed out that—

"* * * the local policeman, in addition to having a duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so."

Persons found under suspicious circumstances are not clothed with a right of privacy which prevents police officers from inquiring as to their identity and actions. The essential needs of public safety permit police officers to use their faculties of observation and to act thereon within proper limits. As was said by the New York Court of Appeals in People v. Rivera, 252 N. Y. S. (2d) 458, 201 N. E. (2d) 32:

"* * * Prompt inquiry into suspicious or unusual street action is an indispensable police power in the orderly government of large urban communities. It is a prime function of city police to be alert to things going wrong in the streets; if they were to be denied the right of such summary inquiry, a normal power and a necessary duty would be closed off."

■ Of course, the right of police to stop a suspicious person does not extend to a right of search in the absence of probable cause. It is well established, however, that the constitutional immunity from unreasonable searches and seizures may be waived by consent or permis-

---

46 Cal. (2d) 114, 293 P. (2d) 57; People v. Simon, 45 Cal. (2d) 645, 290 P. (2d) 531; Cornish v. State, 215 Md. 64, 137 A. (2d) 170; Frye v. United States (9 Cir.) 315 F. (2d) 491; Green v. United States, 104 App. D. C. 23, 259 F. (2d) 180; United States v. Vita (2 Cir.) 294 F. (2d) 524; United States v. Bonanno (S. D. N. Y.) 180 F. Supp. 71; State v. Hatfield, 112 W. Va. 424, 164 S. E. 518; People v. Henneman, 367 Ill. 151, 10 N. E. (2d) 649; Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. ed. (2d) 134; People v. Tinston, 6 Misc. (2d) 485, 163 N. Y. S. (2d) 554.

sion to make the search and seizure. We are satisfied here that despite the apparent inconsistency of the testimony of the two police officers involved, the search was consented to by defendant. City of St. Paul v. Stovall, 225 Minn. 309, 30 N. W. (2d) 638; State v. Harris, 265 Minn. 260, 121 N. W. (2d) 327; Zap v. United States, 328 U. S. 624, 66 S. Ct. 1277, 90 L. ed. 1477, reversed on other grounds, 330 U. S. 800, 67 S. Ct. 857, 91 L. ed. 1259; United States v. Eldridge (4 Cir.) 302 F. (2d) 463.

It is, of course, true that the consent must be freely given without any coercion or threats and that any claim of waiver of constitutional rights must be viewed with caution. Villano v. United States (10 Cir.) 310 F. (2d) 680; Channel v. United States (9 Cir.) 285 F. (2d) 217. Here, however, there is no evidence of threats or coercion. The only testimony on the question was that the police asked if they could look in the trunk; and that defendant opened the trunk for them or gave them permission to open it. The facts in this case may be distinguished from those in the Villano case, where the police threatened to break into accused's store if he did not consent, and from those in the Channel case, where accused had been under arrest for some time and his apartment was searched in his absence. The facts in this case are similar to those in State v. Harris, *supra,* and our decision must be controlled by that authority. It seems to us that under the circumstances here the conditions under which defendant was found and the contradictory stories he told in unsuccessfully attempting to explain how he got possession of the stolen property provided the officers with probable cause for his arrest and the seizure of the television set.

It is unnecessary to consider the other points raised by defendant. Petition denied.