## STATE v. RONALD JOHN HOLMES.

140 N. W. (2d) 610.

February 18, 1966—No. 39,646.

---

Richard L. Kelly, for appellant.

Robert W. Mattson, Attorney General, Robert W. Johnson, County Attorney, and G. D. Giancola, Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction upon which defendant was sentenced to the custody of the commissioner of corrections at the State Prison at Stillwater. The defendant was charged by information and found guilty of the offense of aggravated robbery.[1]

From the record it appears that in the evening hours of December 15, 1963, defendant entered the Liberty Park grocery store located in the city of Coon Rapids. After briefly looking about the L-shaped premises,

---

[1] The defendant was charged under Minn. St. 609.245 (L. 1963, c. 753, § 609.245), which provides: "Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both."

A dangerous weapon is defined by § 609.02, subd. 6 (L. 1963, c. 753, § 609.02, subd. 6), as follows: " 'Dangerous weapon' means any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm."

Bodily harm is defined by § 609.02, subd. 7 (L. 1963, c. 753, § 609.02, subd. 7), as follows: " 'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition."

he left and returned a short time later. On his return, he approached the clerk at the cash register and instructed her to go to the rear of the store. There they met the manager, whereupon defendant directed him at gunpoint to open the store safe. While the safe was being opened, some customers came on the premises and defendant forced them to go to the rear and locked them in a lavatory located there. After forcing the clerk to open the cash register, and removing the money from it, he locked her in the lavatory with the others. When he completed his activities, he left, taking with him approximately $2,000 in stolen money.

All of the customers accosted by defendant as they entered the premises had an opportunity to fully observe him and most were able to identify him at the trial. Several of the state's witnesses described his appearance, size, the kind of clothes he wore, and the fact that he carried a short barrel gun. Among the male witnesses was an automobile mechanic and a former marine M. P., who were able to describe the gun as one capable of producing great bodily harm. One of the witnesses noted the make, model, and license number of defendant's car, which was parked outside and near the premises. Two days later defendant was arrested in Minneapolis, at which time he was driving the same automobile. He was taken into custody and his automobile was impounded and stored in the basement of the Minneapolis police garage. Thereafter he was transported to the Anoka County jail and on December 23, 1963, was charged with the offense for which he was convicted. There is no dispute that defendant was the registered owner of the automobile identified at the scene of the burglary and impounded in the police garage. Two alibi witnesses, whom the jury obviously did not believe, testified for the defense to the effect that at the time of the robbery the defendant was elsewhere.

On the morning of December 20, 1963, Robert Drowns, Anoka County Deputy Sheriff, who investigated the case for the state, was informed that defendant's automobile was in the police garage in Minneapolis. He went there without a search warrant and searched the automobile. He found a pair of suede "hush puppy" shoes on the floor behind the driver's seat. Under the front seat he found a piece of paper on which was written the address of the Liberty Park grocery store and directions as to how to get there. Both of these articles of evidence were admitted at the trial

over defendant's objection. It is the principal contention of defendant that these articles were the product of an unlawful search and seizure in violation of his constitutional rights under U. S. Const. Amend. IV and Minn. Const. art. 1, § 10.

We have recognized by our decisions that an automobile is constitutionally protected against unreasonable searches and seizures. We have also recognized that due to its mobility the rules governing its search are necessarily relaxed. State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115; State v. Harris, 265 Minn. 260, 121 N. W. (2d) 327, certiorari denied, 375 U. S. 867, 84 S. Ct. 141, 11 L. ed. (2d) 94; State ex rel. Ogg v. Tahash, 273 Minn. 187, 140 N. W. (2d) 692. See, Annotation, 89 A. L. R. (2d) 715; State ex rel. Branchaud v. Hedman, 269 Minn. 375, 130 N. W. (2d) 628, certiorari dismissed, 381 U. S. 907, 85 S. Ct. 1456, 14 L. ed. (2d) 289; State v. Huffstutler, 269 Minn. 153, 130 N. W. (2d) 347; State v. Gebhard, 272 Minn. 336, 137 N. W. (2d) 168; 17 Dunnell, Dig. (3 ed.) § 8708a.

In the recent case of State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3, we pointed out that the improper admission in evidence of a confession over proper objection is never error without prejudice. This rule, however, is not invariably applied with reference to evidence illegally seized by the prosecution and admitted over objection of the defense. We said in the Rasmussen case (272 Minn. 551, 141 N. W. [2d] 11):

"Upon appeal or in postconviction procedures, a conviction based in whole or in part upon evidence obtained in violation of the Federal constitutional rights of the defendant will be set aside even though no proper objection was made at the time of trial, if to do otherwise, in light of the record considered as a whole, would be to perpetuate a substantial and essential injustice in the sense that as a result an innocent man may have been convicted. In this connection, the rule is the same whether the proceedings be by appeal or by postconviction procedures, subject only to the consideration that in all of these cases the interests of the state in proper law enforcement must be placed in balance with the interests of the individual in preserving his freedom."

In State v. Sorenson, *supra,* we held that certain evidence removed

from a defendant's automobile at the police station 40 minutes after his arrest, without a warrant and while he was in custody, was the product of an illegal search and seizure and was inadmissible, and that the particular evidence should have been suppressed. We held, nevertheless, that in light of the entire evidence in that case the illegally seized evidence was not sufficient to warrant a reversal of conviction because of the fact that it was cumulative in nature, and in light of the force of other dominating evidence in the state's case.

In this case we must be controlled by two decisions of the United States Supreme Court, Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. (2d) 777, which discusses the test of reasonableness to be applied to searches of motor vehicles, and Fahy v. Connecticut, 375 U. S. 85, 84 S. Ct. 229, 11 L. ed. (2d) 171, which discusses the "harmless error" criteria as applied to the admission of evidence illegally obtained. In the Preston case it was said (376 U. S. 366, 84 S. Ct. 883, 11 L. ed. [2d] 780):

"* * * *Our cases make it clear that searches of motorcars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible.* [Citations omitted.] *Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar.* [Citation omitted.] *But even in the case of motorcars, the test still is, was the search unreasonable.* * * *

"* * * Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. [Citations omitted.] This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, *supra* [267 U. S. 132, 45 S. Ct. 280, 69 L. ed. 543, 39 A. L. R. 790], 267 U. S., at 158, and, to an extent depending on the circumstances of the case, to the place where he is arrested [citations omitted]. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons

and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime — things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." (Italics supplied.)

In the Fahy case the United States Supreme Court discussed the question of whether it was error without prejudice to receive illegally seized evidence. The court there said that it was not concerned with whether there was sufficient evidence on which the defendant could have been convicted without the evidence complained of. It said the test to be applied was whether there was a reasonable possibility that the evidence complained of might have contributed to the conviction.

Although the evidence of the state in this case was strong and persuasive, we cannot say under the rule laid down in the Fahy case that the admission of the shoes and the piece of paper over the objection of defendant was harmless error. The shoes and telltale paper with the address and directions on it may be classified as "papers and effects" within the protection against unreasonable search and seizures granted by the Fourth Amendment, and they were found in defendant's automobile at a time and place too remote to be considered incidental to arrest. Since we cannot say under the facts in this case, applying the Fahy rule, that the illegally obtained evidence did not contribute to the conviction, we must grant a new trial.

Reversed and new trial granted.