CITY OF ST. PAUL v.
DUANE JOHNSON AND ANOTHER.

179 N. W. (2d) 317.

August 7, 1970—No. 41987.

*Donald J. Heffernan,* for appellants.

*Robert E. O'Connell,* Corporation Counsel, and *Thomas M. Mooney,* Chief Prosecuting Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and James F. Murphy, JJ.

Per Curiam.

Appeal from a judgment of conviction for transporting a firearm in violation of the St. Paul Legislative Code, § 425.05(1).[1] Defendants appeal, contending that their arrest was illegal and that evidence used against them was the product of an unlawful search and seizure.

From the record it appears that at about 9 p. m. on the evening of December 29, 1968, a police officer on duty in an unmarked police car observed defendants walking toward a grocery store. As defendants approached the entrance, the officer noticed that one defendant wore a ski mask and the other pulled a similar mask down over the lower half of his face. The officer parked in front of the store in order to observe defendants. At a pretrial hearing on a motion challenging the legality of the arrest, the officer was asked:

"Q. When you pulled up what did you observe these two people doing?

"A. I saw them in the store, and they looked out the door and I figured they saw me.

\* \* \* \* \*

"Q. Did you say you observed them look out the door?

"A. Yes, sir.

\* \* \* \* \*

"Q. You saw them what appeared to be looking out the store with the masks on?

"A. I know one was, I couldn't say for sure whether the second one was at that time."

---

[1] St. Paul Legislative Code, § 425.05(1), provided: "Firearms whose possession is not prohibited by this ordinance or by law may be transported in Saint Paul in the following manner and not otherwise:

"(1) In a motor vehicle, only if the firearm is unloaded and placed in a secured container or located in the trunk of the vehicle; except all hand guns must be in a secured container and located in the trunk or if there is no trunk, in the farthest rear position of the vehicle."

This language is now found in § 425.05(A).

At trial, the officer testified:

"A.  I noticed the parties moving about in the store for a minute or two minutes and then approach the front counter. One of the parties lifted the mask, ordered some articles I couldn't see and paid for them and left the store.

"Q.  During the time you observed these individuals inside the store did they have the ski masks on?

"A.  Up to the time they approached the counter and lifted it up.

"Q.  For how long a period could you observe them inside the store wearing the ski masks?

"A.  It was a minute or two. I couldn't observe them constantly. At times they would be in parts of the store I couldn't see from the door.

"Q.  After they went to the counter and bought some articles, what, if anything, happened?

"A.  They left the store right after.

"Q.  To clarify a point, officer, what were the weather conditions on this particular day and time?

"A.  It had snowed earlier in the evening, but it wasn't severe for around here. In fact, I was riding with the window open. It wasn't extremely mild.

"MR. HEFFERNAN:  Objection.

"A.  (continuing) Probably in the lower 30's."

Defendants left the store and walked toward their car (parked about 2½ blocks from the grocery store) while the officer followed them in his car at a distance of 60 to 70 feet. The officer watched them walk about 30 feet past their car and then left and drove around the block. When he returned to the parked vehicle, defendants were no longer in sight. At the pretrial hearing, the officer testified:

"I thought I would check the car out, in view of the fact that footprints didn't seem to lead to any house. I looked in the car to check the ignition and one was laid out in the front seat, one in the back, concealing themselves."

At trial, he testified:

"Q.  What did you do after you observed these parties?

"A.  I stepped back and I drew my gun and pulled the car door open.

*  *  *  *  *

"A.  I asked them what they were doing in the neighborhood. They said they had chased some white boys down there. I asked why they had walked so far from their car and why they would hide from me.

They said something about they thought these other boys were coming back.

* * * * *

"A. * * * I told them they were under arrest for attempted robbery, lurking and carrying a concealed weapon."

About 10 minutes later, defendants were placed in a second squad car. Their car was then searched, and a loaded .38-caliber revolver was discovered underneath the rear seat.

Defendants were charged with transporting a loaded firearm contrary to St. Paul Legislative Code, § 425.05(1). The trial court denied defendants' motions to suppress the seized revolver as discovered in violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution. The trial court found defendants guilty and imposed a sentence of 45 days in the workhouse.

Preliminary to a discussion of the validity of defendants' arrest, it should be pointed out that it is unnecessary in this case to restate principles of law as they relate to the scope and delineations of searches of motor vehicles incident to lawful arrest. State v. LaJeunesse, 280 Minn. 381, 159 N. W. (2d) 261; State v. Russell, 282 Minn. 223, 164 N. W. (2d) 65, certiorari denied, 396 U. S. 850, 90 S. Ct. 109, 24 L. ed. (2d) 100; State v. Holmes, 273 Minn. 223, 140 N. W. (2d) 610; Sipera v. State, 286 Minn. 536, 175 N. W. (2d) 510. These authorities review controlling decisions of the United States Supreme Court which include Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. (2d) 777; Cooper v. California, 386 U. S. 58, 87 S. Ct. 788, 17 L. ed. (2d) 730; and Chimel v. California, 395 U. S. 752, 89 S. Ct. 2034, 23 L. ed. (2d) 685.

In the instant case, the matter to be resolved is whether the officer had probable cause for a valid arrest. Minn. St. 629.34(1) provides:

"A peace officer may, without warrant, arrest a person:

"(1) For a public offense committed or attempted in his presence;"

Minn. St. 629.35 provides:

"Such peace officer may at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and shall be justified in making such arrest, though it shall afterwards appear that no felony has been committed; but when so arresting a person without a warrant, the officer shall inform him of his authority and the cause of the arrest, except when he shall be in the actual commission of a public offense, or shall be pursued immediately after an escape."

As stated in State v. Olson, 271 Minn. 50, 56, 135 N. W. (2d) 181, 185,

"* * * the constitutional validity of the officer's search of defendant in this case must depend upon the constitutional validity of his arrest, and that in turn depends upon whether at the time of his arrest probable cause existed—that is, whether at the time of the arrest the facts and circumstances within their knowledge and regarding which they had reasonably trustworthy information were sufficient to warrant a prudent officer or person in believing that the defendant had committed or was committing an unlawful offense."

Moreover, as expressed in State v. Fish, 280 Minn. 163, 169, 159 N. W. (2d) 786, 790:

"* * * Probable cause is concerned with probabilities and is something more than mere suspicion and something less than evidence which would sustain a conviction."

In the case at hand, it may fairly be said that the police officer rationally concluded that defendants had progressed sufficiently in their enterprise to justify an arrest for a felony, attempted robbery contrary to Minn. St. 609.17, subd. 1:

"Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime, and may be punished as provided in subdivision 4."

The fact that defendants were subsequently charged with a lesser offense is of no consequence. Neither is it particularly significant that in all likelihood defendants were not guilty of the substantive crime of attempt. This court, in State v. Harris, 265 Minn. 260, 264, 121 N. W. (2d) 327, 331, approved the following language:

"* * * [P]robable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest."

Here, the arresting officer could reasonably infer from all the circumstances that he had interrupted an attempted robbery. Since the arrest was based upon probable cause, the search made incident to it was lawful.

Affirmed.

Mr. Justice Kelly, not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.