GRIFFIN, J.
Martin Haynes Nicol, Jr. [“Nicol”] appeals his conviction for conspiracy to commit robbery with a firearm. We affirm.
On December 10, 2002, at approximately 5:25 a.m., Deputy Bogan of the Orange County Sheriffs office observed two black males at a closed strip mall, looking around the corner towards a 7-Eleven Convenience Store. One male was crouched down, with the other leaning over his shoulder, and both men were wearing dark clothing. Deputy Bogan attempted to make contact with the two men, who took off running upon spotting the deputy. The men ran southbound to a vehicle parked near a dumpster. As they neared their vehicle, Deputy Bogan observed that they were wearing dark colored bandanas tied “Old West style” around their noses and covering the lower half of their faces. Nicol dove headfirst into the vehicle, reaching up to his waist, before withdrawing from the vehicle. A second man ran around to the passenger side and briefly disappeared from view, crouching down beside the vehicle. The deputy ordered the men to show him their hands and get on the ground. They obeyed after two or three commands were given. After backup arrived, the two men, along with a third man found in the back seat of the vehicle, were arrested on the scene for loitering and prowling. A pat-down search of Nicol yielded a .40 caliber magazine for a semi-automatic style handgun. A matching .40 caliber handgun was found under the driver’s seat. A BB style or pellet gun was found on the ground outside the passenger door.
Following their arrest, all three men were taken to the station, where they were interviewed by Detective Eifler. During his interview, Nicol said that the three men were at their apartment all day and decided to take a drive. At first, he said they parked behind a muffler shop to get out and take a walk, at which time they were stopped by Deputy Bogan. He later admitted, however, that they had discussed the need to get some money any way they could, which included the possibility of robbing someone. He said they talked about robbing someone coming out of the store, but did not intend to rob the store. During the interview, Nicol produced a bandana from his pocket. He said he was wearing it around his neck when they were outside the store. He admitted he had a gun in his waistband when he was first approached by Deputy Bogan and that Turner, a second man, was carrying a BB gun. Nicol said that when he had run back to his car, he had thrown his gun into the back seat.
Based on these facts, Nicol filed a motion to suppress, alleging that he had been detained without a reasonable suspicion of criminal activity. He also contended that his arrest for loitering and prowling was invalid, as the officer failed to give him the opportunity to dispel any alarm or immediate concern which would otherwise be warranted by his presence near the 7-Eleven, which he claimed was required by section 856.021(2), Florida Statutes (2001).[1]
*233 At the conclusion of the hearing, the court denied the motion to suppress, stating:
In the case here, Officer Bogan — Deputy Bogen clearly had reasonable suspicion to stop the individuals. First, he saw them crouching, observed — at a closed business, observing the only open business in the area. He circled that business and came around the corner. And upon his vehicle becoming visible around the corner, both individuals took flight and did not stop, even when he initiated his lights and chirped his siren. They looked back at the officer, obviously seeing him, and the officer observed on their faces bandanas. Deputy Bogen would have been derelict in his duty had he not further investigated this matter.
* * *
The initial detention and investigation was lawful under Illinois v. Wardlow, suspicious activity, coupled with headlong flight. The officers had probable cause at that point to arrest the defendant for resisting an officer without violence. Upon further investigation, discovering the firearm certainly had reached the probable cause to arrest for carrying a concealed firearm.
The Third District in Tubbs v. State at 897 So.2d 520, has indicated that as long as the officer is right, even for the wrong reasons, that that is sufficient to pass constitutional muster.
A jury found Nicol guilty as charged of conspiracy to commit robbery with a firearm. The jury made special findings that Nicol had possession of a firearm and was wearing a mask.
The trial court properly concluded that the initial encounter between Deputy Bogan and Nicol constituted a valid investigatory stop because Deputy Bogan had a reasonable suspicion that Nicol had committed, was committing, or was about to commit a crime. See Popple v. State, 626 So.2d 185 (Fla.1993); § 901.151, Fla. Stat. (2001); see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (authorizing investigatory stop because officers had reasonable suspicion that defendant was about to commit midday robbery, where officer observed Terry and his compatriot, Chilton, repeatedly walk past and peer into a store window, and then confer with a third man, Katz, leading the officer to believe the men were planning to rob the store).
Indeed, although not discussed by the trial court, Deputy Bogan’s observations may have supported probable cause for arrest once the deputy saw that the suspects were wearing masks. Men wearing masks at 5 a.m. in the morning, acting furtively and watching a 7-Eleven store would appear to furnish probable cause to arrest for attempted robbery or conspiracy to commit robbery.[2] See People v. Terrell, *234 110 Ill.App.3d 1086, 66 Ill.Dec. 816, 443 N.E.2d 742 (1982) (affirming conviction for attempted armed robbery, where defendant was observed hiding in weeds of an empty lot about 25 feet from recently opened gas station, was seen wielding a gun, fled when police arrived and was found with black ladies’ stockings in his pocket); Hampton v. State, 468 N.E.2d 1077 (Ind.Ct.App.1984) (holding evidence sufficient to support conviction for attempted robbery where defendant parked his car near restaurant building next to a busy highway, hid in the bushes attempting to avoid light from passing cars and was found wearing a ski mask which could be pulled down over his face, even though defendant did not enter restaurant or accost employees); see also State v. Thompson, 348 So.2d 618 (Fla. 4th DCA 1977); City of St. Paul v. Johnson, 288 Minn. 519, 179 N.W.2d 317 (1970).[3]
AFFIRMED.
SAWAYA and EVANDER, JJ„ concur.

. Section 856.021(2) provides:
(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it im *233 practicable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.

. We note that by statute, wearing a mask has been made a misdemeanor of the second degree under certain circumstances. See generally §§ 876.12-20, Fla. Stat. (2001). For example, section 876.12 criminalizes wearing a mask or hood on a public way; section 876.13 criminalizes the wearing of a hood or mask on public property; and section 876.14 makes it illegal to wear a hood or mask on the *234 property of another. These statutes, which were first passed in the 1950's, were apparently aimed at the Ku Klux Klan. The Florida Supreme Court found one of these statutes (all of which are virtually identical) unconstitutional in Robinson v. State, 393 So.2d 1076 (Fla.1980) (holding that statute criminalizing wearing hood or mask on public property was overbroad, and exceptions provided by section 876.16 were not sufficient to cure this fatal overbreadth, nor were the statutory words susceptible of any limiting construction). The legislature apparently attempted to cure these problems in 1981, by the passage of section 876.155, Florida Statutes, which limits the application of these statutes.

. Even if Nicol’s arrest for loitering and prowling were invalid, the arrest was still valid since the facts known to the officer would have supported his arrest on a valid, alternative basis. See, e.g., State v. Carmody, 553 So.2d 1366 (Fla. 5th DCA 1989); McCarter v. State, 463 So.2d 546, 549 n. 1 (Fla. 5th DCA 1985).